## McCONIHE, ᴇᴛ ᴀʟ. *v.* COMPTROLLER OF THE TREASURY, ᴇᴛ ᴀʟ.

[No. 180, September Term, 1966.]

*Decided April 10, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*David Huddle,* with whom were *King & Nordlinger* on the brief, for appellants.

*Thomas A. Garland, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for appellees.

MARBURY, J., delivered the majority opinion of the Court. BARNES, J., dissents. Dissenting opinion at p. 279, *infra.*

This is an appeal from an order of the Circuit Court for Montgomery County, Judge Anderson presiding, in which the court affirmed the upholding by the Maryland Tax Court of a twenty-five per cent penalty for delayed administration assessed by the register of wills for Montgomery County.

The undisputed facts are as follows: Malcolm S. McConihe, Sr., a resident of the District of Columbia, died on July 1, 1961, leaving a last will and testament. At the time of his death, he was seized and possessed of valuable real property in Montgomery County, Maryland. On or about August 3, 1961, letters testamentary on his estate were granted to appellants, Malcolm S. McConihe, Jr. and F. Moran McConihe, in the District of Columbia. Thereafter, in order to clear title to the real estate located in Montgomery County, ancillary letters testamentary on the estate were granted to appellants by the Orphans' Court of Montgomery County on November 15, 1961. No inventory of the real property in Montgomery County was filed with the Orphans' Court of Montgomery County within ninety days after decedent's death. On July 5, 1962, appraisers appointed by the Orphans' Court of Montgomery County re-

turned an inventory of the decedent's real estate located in that county. Pursuant to an order of the court, the real estate was reappraised, and the inventory based on the reappraisal was returned on October 26, 1962. In June 1963, the register of wills for Montgomery County computed the inheritance tax on the real estate at $7,926.38, and pursuant to Code (1957), Article 81, Section 170, assessed a twenty-five per cent penalty for delayed administration in the amount of $1,981.59. Appellants paid the tax and penalty on July 8, 1963, and filed a claim with the register of wills on September 10, 1963, for a refund of the amount of penalty.

This claim for refund was rejected and an appeal to the Maryland Tax Court was filed. That court entered an order affirming the action of the register of wills for Montgomery County and denying the claim of appellants for a refund.

In affirming the decision of the Tax Court, the Circuit Court held that Section 170 of Article 81 was to be construed in the light of other sections bearing on the same or related subject matter and that when no administration or inventory was filed within a ninety day period from the death of the decedent, any real estate which passed subject to the inheritance tax was subject to a twenty-five per cent penalty, assessable against the person or persons who became liable for the payment of such tax.

The applicable statutes involved are Code (1957), Article 81, Sections 167, 169, and 170.[1] Section 167 authorized the orphans' court of the county where said real estate was located to issue summonses for parties entitled to administration who failed to administer within ninety days after the death of a decedent, and to appoint appraisers on the application of any one interested in real estate where no administration had been taken. Section 169 provided for the filing of an inventory within ninety days after the death of the person and imposed the duty upon the person receiving such an interest or estate in property to file an inventory where there was no formal ad-

---

1. Section 170 was amended, Laws of Maryland 1965, Ch. 790, so as to remove the penalty for the payment of an additional sum equal to 25% of the tax due.

ministration subject to the jurisdiction of any court. Upon the filing of an inventory the orphans' court had to appoint at least two appraisers to value the property in question for the purpose of ascertaining the amount of tax which was due, and the tax so determined at once became payable to the register of wills. Under Section 170, whenever any property passed subject to the inheritance tax and there was no formal administration and no inventory was filed as required by Section 169, the register of wills had the duty to apply for the appointment of at least two appraisers to value any real property for the purpose of determining the amount of tax due and payable at once to the register of wills. In addition, the persons liable for the payment of the tax were also liable for the payment of an additional sum equal to twenty-five per cent of the tax as a penalty for delaying the administration.

In ascertaining the intention of the legislature, all parts of a statute are to be read together to find the intention as to any one part, and all parts are to be reconciled and harmonized if possible. See *Comptroller v. Atlas Industries,* 234 Md. 77, 198 A. 2d 86. Tax statutes should be construed in favor of the citizen and against the state where there is doubt as to their scope, *Fair Lanes v. Comptroller,* 239 Md. 157, 210 A. 2d 821; *Comptroller v. Rockhill Inc.,* 205 Md. 226, 107 A. 2d 93, and their provisions must not be extended to cases not plainly within the language of the statute. *Fair Lanes v. Comptroller, supra.* However, these rules do not require that the statute imposing a tax be construed so as to defeat the clear intention and purpose of the legislature. *Diamond Match Co. v. State Tax Comm.,* 175 Md. 234, 200 Atl. 365.

Each section of the statute involved dealt with the enforcement of requiring the report of taxable assets and the payment of inheritance tax thereon. Section 167 controlled the situation where there was no administration. Section 169 controlled where there was no inventory filed in the orphans' court in the county in which the real estate was located. Where there was no formal administration of an estate subject to the jurisdiction of any court of this state and no inventory was filed, under Section 170 the twenty-five per cent penalty had to be

imposed. Reading the three sections together, where there was no administration taken within ninety days after the death of the decedent which was subject to the jurisdiction of any court of this state and where no inventory was filed in the appropriate orphans' court within ninety days after decedent's death, the persons liable for the inheritance tax were liable for the penalty imposed by Section 170. See *State v. Cadwalader, Exec.*, 227 Md. 21, 25, 174 A. 2d 786, where it was said: "Section 170, *supra*, covers situations where no inventory is filed and no formal administration of an estate occurs."

With two exceptions, this construction of Sections 167, 169, 170, and their predecessors has been the one observed throughout a series of opinions of the Attorney General. Though not binding on this Court, these opinions are entitled to careful consideration as they serve as important guides to those charged with the administration of the law. *State v. Cadwalader, Exec., supra*.

In 49 Opinions of the Attorney General 439 (1964) there is a review of the imposition of the twenty-five per cent penalty on a recipient of property subject to inheritance tax as provided for by Article 81, Section 170. Preliminarily, the opinion points out that the imposition of the penalty provided for in Section 170 is wholly dependent upon the nonperformance of the duties imposed by Section 169. Whether the duties have been performed must be determined within ninety days after the death of the decedent. Once a Maryland administration has been opened within ninety days of death, the recipient of property passing without the necessity of administration is not touched by the requirement of Section 169. The opinion takes the view that

> "nothing short of a *Maryland* administration of the decedent's estate within 90 days will render Section 169 inoperative. Thus, a foreign administration of part of the decedent's estate, is not, in our opinion, sufficient to excuse reporting required by Section 169 since the foreign personal representative is not subject to the reporting requirements of Sections 155 and 171 of Article 81, *supra*. 32 Opinions of the Attorney Gen-

eral 431 (1947); 30 Opinions of the Attorney General 205 (1945). Likewise, the existence of an estate of the decedent subject to administration does not relieve the recipient of taxable property of his duty to report under Section 169 if a formal administration has not been instituted within 90 days of death. Later opening of a formal administration will not retroactively cure a default under Section 169. 36 Opinions of the Attorney General 316 (1951)."

The opinion also stated that no monetary sanctions are provided by the law against a personal representative who fails to administer promptly, short of the risk that the orphans' court having jurisdiction over the decedent's estate may, after notice, relieve him of the privilege of administering the estate.

We do not find persuasive the two exceptions to the otherwise consistent construction. In the earliest of the two, 25 O.A.G. 638 (1940), it was held that no penalty was due where the decedent died testate in 1931, but no administration was taken out until 1940 when the executor named in the will applied for letters. Without explanation the opinion states:

"We do not think that any penalty is due. Section 134 [§ 170 Code (1957)] of Article 81 provides for a penalty of twenty-five per cent of the amount of the tax, but that section, particularly when read in conjunction with section 133 [§ 169 Code (1957)] to which it refers, clearly does not apply to estates administered in the Orphans' Court."

In the latest, 40 O.A.G. 542 (1955), where a surviving joint tenant failed to inventory the interest "passing" to her by virtue of the first joint tenant's death, which occurred four years before the death of the surviving joint tenant, and the heirs of the deceased surviving joint tenant failed to file an inventory of the property, the penalty was held applicable to both events. However, citing only 25 O.A.G. 638, as authority and mentioning no time limit for administration, the opinion states that if the estate was formally administered, under the terms of the statute, no penalty was due. These two opinions are against

the construction of the sections here involved which has been followed by a number of attorneys general and which is the most reasonable.

Appellants contended that the penalty was not applicable as there was a "formal administration subject to the jurisdiction of any court * * *"—that court being in the District of Columbia. As pointed out in 40 O.A.G., *supra,* a foreign administration of part of the decedent's estate is not sufficient to excuse reporting required by Section 169. For the purposes of these sections there is no "formal administration subject to the jurisdiction of any court" when administration has not in fact been granted by any court of this state. 36 O.A.G. 316, 317 (1951) ; 32 O.A.G. 431, 433 (1947) ; 28 O.A.G. 241, 242-243 (1943). Also, a later opening of a formal administration in Maryland would not retroactively cure a default under Section 169. 49 O.A.G. 439; 36 O.A.G. 316.

Appellants also argued that unless the register of wills applies for the appointment of the appraisers prior to the filing of a petition for administration, the tax can not be assessed. As stated in *State v. Cadwalader, Exec., supra,* the register of wills is not required to keep himself apprised of every death within or without his jurisdiction. Therefore it would not be necessary to apply for appraisers until after he became aware of a death which might cause inheritance taxes and the penalty for late administration to become due and of the fact that there was no formal administration and no inventory had been filed. Once this occurs,

> *"it shall be and become the duty* of the register of wills * * * *to apply for the appointment of at least two appraisers to value any such estate* * * *,* for the purpose of determining the amount of tax due * * *, and in addition thereto the persons liable for the payment of said tax shall be and become liable by way of a penalty for the payment of an additional sum equal to 25% of the amount of tax *so determined to be due* * * *."* (Emphasis added.)

In this case the register of wills did not apply for the appointment of appraisers, but the appraisers were appointed at

the instigation of appellants by the filing of the petition for ancillary administration. The appellants argued that no penalty could legally be assessed, because no appraisal was effected by the register of wills. Under Section 170 the penalty was imposed because there was no administration and no inventory was filed within ninety days after the death of the decedent. Once the two conditions occurred the penalty automatically became due. The secondary part of Section 170 established the procedure whereby the amount of the penalty was determined. The appellants became liable for the tax and the penalty for late administration ninety days after the death of decedent, and what was left was to determine the amount of that liability. Appellants made no argument that they were prejudiced by the failure of the register of wills to apply for appraisers, nor did they complain that the value of the estate upon which the tax and penalty were based was unfairly determined. They can not now contend that because the register of wills failed to comply with a procedural step in determining the amount of tax due, but which failure did not prejudice the determination, the penalty can not be assessed. We conclude that the court below was correct in holding that the penalty was properly assessed.

> *Order affirmed. Appellants to pay the costs.*

BARNES, J. dissenting:

I dissent because, in my opinion, (1) the language of Sections 167, 168, 169 and 170 of Article 81 of the Maryland Code (1957) when construed together does not indicate a legislative intent that the penalty was applicable under the facts in the present case and, (2) in any event, the language is at least ambiguous and that ambiguity should be resolved in favor of the taxpayer.

(1)

Section 167 outlines the procedure when there has been no administration within 90 days of the date of death of a person who died, seized or possessed of property subject to the Maryland inheritance tax. After the 90 day period "the

orphans' court of the county in which such administration should be granted" shall issue a summons for the parties entitled to administration to show cause why they do not administer. If, however, real estate passes subject to the inheritance tax and there has been no administration, then *"the orphans' court of the county"* where the real estate is located "on the application of any one interested" in the real estate may appoint appraisers to value it and the amount of the inheritance tax may be paid to the register of wills of the county where the application is made.

Section 168 provides that if the parties entitled to administer do not do this in a reasonable time fixed by *"said court"* (i.e. the orphans' court) or if they are incapable or refuse to administer, "administration shall be granted to such person as *the court* [the orphans' court] may deem proper." (Emphasis supplied).

Section 169 imposes duties upon trustees or other persons making distribution where there is no formal administration. It provides, in relevant part, as follows:

"In all cases where estates or any interest therein pass, and there is no *formal administration subject to the jurisdiction of any court,* it shall be the duty of *every trustee or other person* making distribution of any property passing subject to the inheritance tax imposed by this subtitle, to file in the *orphans' court* of the county or city where the decedent had his or her *residence* at the time of his or her death, or in the case of real estate, in the *orphans' court* of the county or city in which the real estate is situated, within ninety (90) days after the death of such person, a full and complete inventory of the property passing subject to the inheritance tax * * *; and in all such cases where any property passes * * * and there is no trustee or other person to make distribution thereof, it shall be the duty of the person *receiving* such estate or any interest therein, to file the inventory within the time and in the manner hereinabove provided. Upon the filing of the inventory as

required by this section, the orphans' court shall appoint at least two appraisers to value the property listed in any such inventory for the purpose of determining the amount of tax due and payable hereunder; and the tax *so ascertained to be due shall become payable at once* to the register of wills, for the nonpayment of which he is authorized to institute suit for and on behalf of the State of Maryland *in any court* of competent jurisdiction." (Emphasis supplied).

It is to be observed that Section 169 imposes the duty on the trustee or other person to file the inventory only when there is "no *formal administration* subject to the jurisdiction of any court." The words "of this State" are not added and, in my opinion, were not inadvertently left out by the General Assembly. The words mean, curiously enough, exactly what they say—"any court". If there were a formal administration of a decedent's estate in a court outside of Maryland, it would be the duty of the personal representative of the decedent appointed by that court to file the inventory and pay the tax and obtain possession or title of the decedent's property in Maryland. Indeed, title to the decedent's personal property vests in such a personal representative because title to personal property follows the person of the owner. Title vests in his executor or administrator when appointed by any court having jurisdiction, whether that court is in Maryland or not. Such a personal representative of the decedent whenever appointed has the primary responsibility to perform the duties incident to and necessary for the collection and distribution of the decedent's assets and the payment of the decedent's debts. The last portion of Section 169 makes it apparent that the words "any court" are not restricted to "any court *of the State of Maryland*", as the register of wills is authorized to sue on behalf of the State of Maryland for the unpaid inheritance tax *"in any court* of competent jurisdiction." It can hardly be thought that if the formal administration of the decedent's estate occurred in York County, Pennsylvania, for example, the register of wills could not sue the nonpaying executor or

administrator in the courts of York County, Pennsylvania. In short, it is clear that the General Assembly appreciated the difference between the courts of this State and courts of other states, as it specifically referred both to the orphans' courts which are courts of this State and "any court" or "any court of competent jurisdiction." The General Assembly said what it meant and meant to include courts of jurisdictions other than those of the State of Maryland. It should be observed also that the filing of the inventory *within the 90 day period* is only imposed on the trustee and other persons where there has been "no administration subject to the jurisdiction of any court." Section 169 does not purport to impose the 90 day requirement upon the executor or administrator appointed pursuant to a "formal administration subject to the jurisdiction of any court."

The same pattern of language is used in the vitally important Section 170 which imposes the penalty involved in the present case. Section 170 provides, in relevant part, as follows:

> "Whenever any property shall pass subject to the inheritance tax imposed by this subtitle, *and* there is *no formal administration* of such estate subject *to the jurisdiction of any court,* and no inventory is filed *as required by* § *169,* it shall be and *become* the duty of the register of wills of the county or city in which the inventory should have been filed, under the provisions of § 169, to apply for the appointment of at least two appraisers to value any such estate that may come to his attention, for the purpose of determining the amount of tax due and payable hereunder, and the tax so ascertained to be due shall *become payable at once* to the Register of Wills, *and in addition thereto* the person or persons liable for the payment of said tax shall be and *become* liable *by way of penalty* for the payment of an *additional* sum equal to 25% of the amount of tax *so determined* to be due and for the non-payment of said tax or the penalty, the Register of Wills is authorized to cause suit to be instituted in the name of the *State of Maryland* through the At-

torney General *in any court of competent jurisdiction.*" (Emphasis supplied).[1]

By Section 170, as I interpret it, *three* conditions must exist before the very severe penalty of 25% of the amount of the tax may be imposed. These are:

1. There is no formal administration of the estate subject to the jurisdiction of any court *and*

2. No inventory is filed as required by §169, *and*

3. The inventory is filed *by the register of wills.*

I reach this conclusion because the statutory language plainly states these conditions. As Judge Collins, for the Court, aptly said in *Fowel v. State,* 206 Md. 101, 105, 110 A. 2d 524 (1955):

"Where the *statutory language is plain and free from ambiguity* and so expresses a definite and sensible meaning, that meaning is *conclusively presumed to be the meaning which the Legislature intended.* The courts are not at liberty to surmise the legislative

---

1. As pointed out in the majority opinion, the General Assembly by Chapter 790 of the Acts of 1965, effective June 1, 1965, repealed entirely the provision for the penalty. The amendment is instructive. Section 170 continues as above quoted down to the filing by the register of wills of the inventory. The amendment then provides that "he [the register of wills] shall immediately send a bill for the payment thereof to the person or persons liable for the payment of said tax. If the tax is not paid within 30 days from the date of said billing, the person or persons liable for the payment of the said tax shall be and become liable for the payment of an additional sum equal to 6% per annum from the date of such billing on such tax; and for nonpayment of said tax and interest, the register of wills is authorized to cause suit to be instituted in the name of the State of Maryland through the Attorney General in any court of competent jurisdiction."

It is significant that interest only begins to run 30 days after the determination has been made by the register of wills and in the amended act the register of wills is authorized to sue for the tax and interest *"in any court of competent jurisdiction."* It is clear that in the amended act, the action of the register of wills is a condition precedent to the beginning date for the running of interest at 6% per annum.

intention to be contrary to the words and letters of the statute or *to insert* or delete *words* with a view of making the statute express an intention which is different from its plain meaning." (Emphasis supplied).

With respect, it appears to me that in Section 170 the majority has added these words "in this State" after the words "any court", has changed the word "and" to "or" after the words "subject to the jurisdiction of any court", has construed the words "no inventory is filed as required by Section 169" to apply to an executor appointed in a formal administration who is not required to file the inventory pursuant to Section 169 and has overlooked the requirement of the statutory language that the penalty "becomes" payable only after the action of the register of wills. To me this represents a departure from the primary rule of interpretation of statutes, i.e., that the legislative intent is to be discovered from the words used by the legislature in the statute. When these words are clear, the search for the legislative intent is ended.

The construction of the statute which I think proper is a sensible one. When there is a formal administration subject to the jurisdiction of *any court,* whether in Maryland or outside it, there is a person duly appointed whose duty it is and to whose interest it is, to file an inventory and pay the Maryland inheritance tax. When there is such a formal administration there is then no need for action by trustees or others or by the register of wills. No time limit was placed upon the filing of inventories by the executor or administrator in the formal administration by Sections 167, 168, 169 or 170. The General Assembly thought that the ordinary processes of administration of estates would sufficiently insure the payment of the inheritance tax. When there was no formal administration, the trustee or other persons was then required to file the inventories within the 90 day period, but even here, the severe 25% penalty was not to be imposed unless the register of wills acted in the matter, appointed appraisers, filed the inventory and determined the tax. This procedure would mean that the trustees or other persons required to file inventories

within the 90 day period if there were no formal administrations, could escape the imposition of the 25% penalty if they in fact filed the inventory *before* the register of wills acted.

This construction is by no means unreasonable as the payment of the inheritance tax is assured when the inventory is filed by the trustee or others regardless of when it was filed. It was only if the delay in filing by the trustees or others occurred after the 90 day period *and* after the register of wills acted, that the penalty was imposed. The action by the register of wills would most likely only occur after a protracted delay as the majority suggests, and the penalty was most likely, in part at least, to punish the person subject to the penalty for the increased work by the register of wills in the unusual and extraordinary situation. Under this construction, the executor of the decedent's estate in the present case would not be subject to the penalty because not one of the three conditions precedent to its imposition is present. He was appointed as a result of a formal administration in a court of competent jurisdiction and duly qualified as executor; he was not required to file an inventory pursuant to Section 169; and, the inventory was not filed by the register of wills. Accordingly, he was not subject to the penalty.

(2)

Even if it be thought that the language of the four sections is not clear and unambiguous in imposing the three conditions mentioned for the imposition of the penalty, the best that can be said for the contention of the Comptroller, as I see it, is that the language is ambiguous. Surely in the absence of the words "in this State," the words "any court" *can* mean courts of competent jurisdiction outside the State of Maryland. The use of the word "and" *can* import as conditions precedent to the imposition of the penalty, the requirement that there be no formal administration as well as a failure to file as required by Section 169. The words "and shall become liable" *can* mean that the liability for the penalty only comes into existence upon the action of the register of wills.

If the language is thought to be ambiguous, it is clear under the decisions of this Court that it must be construed in favor

of the taxpayer and sufferer of the penalty. See *Fair Lanes v. Comptroller,* 239 Md. 157, 210 A. 2d 821 (1965) and *Comptroller v. M. E. Rockhill, Inc.,* 205 Md. 226, 107 A. 2d 93 (1954), cited in the majority opinion.

There are, however, several additional rules of construction which aid the executor in the present case.

It is well settled in Maryland and in the other states that statutes imposing a penalty are to be strictly construed in favor of the citizen and taxpayer. *Fisher v. Bethesda Discount Corporation,* 221 Md. 271, 157 A. 2d 265 (1960). See *Utility Corporation v. Maxwell,* 189 So. 2d 643 (Fla. App., 1966) ; *Bachus v. Swanson,* 179 Neb. 1, 136 N. W. 2d 189 (1965) ; *Salvation Army v. State,* 144 Mont. 415, 396 P. 2d 463 (1964).

It is also established in this State that when there is ambiguous language in a statute, the courts will prefer a construction which will be fair and reasonable rather than one leading to injustice or oppressive results. *Kolb v. Burkhardt,* 148 Md. 539, 129 Atl. 670 (1925). See *Height v. State,* 225 Md. 251, 170 A. 2d 212 (1961).

The facts in the instant case, indicate to me a situation where it is most unreasonable and indeed unjust and oppressive to impose the penalty on the executor. The decedent, a resident of the District of Columbia, died in that jurisdiction on July 1, 1961, leaving a will which was duly probated there by a court of competent jurisdiction on August 3, 1961. The executor duly qualified. The decedent owned *real estate* in Montgomery County and to clear the title to that real estate, the executor, on November 15, 1961, applied for and was granted ancillary letters of administration by the Orphans' Court of Montgomery County. At the suggestion of the executor—and not by the register of wills—two appraisers were appointed. These appraisers returned the inventory on July 5, 1962. On October 26, 1962, there was a reappraisal and an inventory based on the reappraised value was returned. It was not until June 1963 that the inheritance tax *and* the 25% penalty was assessed, which was paid on September 10, 1963, by the executor and a claim for refund filed.

It is clear from these facts that the inheritance tax on this

land owned by a non-resident was never in the slightest jeopardy. The tax is an encumbrance on the land and there can be no transfer of title except subject to the tax. Then too, the executor, appointed by a court of competent jurisdiction, obtained ancillary letters of administration and caused the inventory to be filed, and upon this inventory (or the later reappraisal) the inheritance tax was calculated and paid. To impose a 25% penalty of $1,981.59 on a tax of $7,926.38 under these circumstances seems to me to be harsh and oppressive and is a result to be avoided if the language of the statute can be reasonably interpreted to do this. It is clear to me that it can be so interpreted. Indeed, the foreign executor in this case had done nothing that a "domestic" executor might have done and paid no penalty whatever.

In my opinion, the majority's reliance on certain opinions of the attorney general and on our decision in *State v. Cadwalader,* 227 Md. 21, 174 A. 2d 786 (1961) is misplaced. Indeed, they tend to support a view contrary to the Court's decision in this case. The earliest opinion of the attorney general, 25 O.A.G. 638 (1940), by a distinguished attorney general, formerly a member of this Court, and an opinion in 40 O.A.G. 542 (1955) are inconsistent with the other four opinions of the attorney general rendered in 1943, 1947, 1951 and 1964, mentioned in the majority opinion. It would seem that the earliest opinion of the attorney general being the one nearest to the enactment of the legislation and its first official construction by the attorney general might well be more likely to reflect the intention of the General Assembly than later contrary opinions. In any event, when attorney generals divide on the correct interpretation of this statutory language, it is difficult to believe that the language is not at least ambiguous.

Moreover, *Cadwalader* rather than supporting the decision of the majority, is in accord with an interpretation of Section 170, which requires action by the register of wills *before* the tax and penalty become due and owing. We held in *Cadwalader,* in reversing the lower court's ruling that the four year statute of limitation had barred the State's claim for inheritance tax, that the action for the tax and penalty under Sec-

tion 170 *did not accrue until the inventory and appraisal was filed by the register of wills,* so that the four year statute of limitation was not a bar to action by the State instituted within four years from such filing and determination by the register of wills.

I would reverse the order of the Circuit Court and require the appellee to pay the costs.